Appellant Benjamin Vanover got into a brief argument with his friend, Timothy Mayo, while the two men stood on a Proctorville street one night in May 1998. The appellant ended the argument by punching Mayo in the mouth. Mayo fell backwards, hit his head on the pavement, and died from a resulting head injury. The appellant was convicted of involuntary manslaughter for causing Mayo's death by committing a felonious assault. The trial court sentenced him to the maximum term of ten years imprisonment. The appellant raises two assignments of error on this appeal:
 "I. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THE PROXIMATE RESULT OF THE VICTIM'S DEATH WAS DUE TO APPELLANT COMMITTING MISDEMEANOR ASSAULT [AND] NOT FELONIOUS ASSAULT."
 "II. APPELLANT'S SENTENCE IS CONTRARY TO LAW, AS THE RECORD DOES NOT SUPPORT A MAXIMUM SENTENCE."
Finding neither assignment of error well-taken, we affirm the appellant's conviction and sentence.
 I.
The events leading to Mayo's death began earlier in the evening. The appellant, Nikki Neff, and Katherine Bailey stopped at Mayo's apartment in Proctorville, where several people had gathered in the yard for an impromptu party. Many of the people at Mayo's apartment consumed alcoholic beverages, including Mayo and the appellant. Almost an hour after arriving at the party, the appellant attempted to begin a conversation with Darrell Turley, a friend of Mayo's. Turley, who had also been drinking at the party, did not acknowledge the appellant in a friendly manner. Turley said something to the appellant, which included the term "little boy." The appellant took exception to Turley's comments and exchanged profanities with Turley. The appellant and Turley got into a brief scuffle, which culminated when the appellant pushed Turley to the ground and kicked him at least twice.
Following the fight, the appellant, Neff, and Bailey left the party to visit other friends. Later that night, the three were driving along Front Street in Proctorville when the appellant saw Mayo walking down the street with Turley and Rick Carter. The appellant told Bailey to stop the car so he could apologize to Mayo for fighting at his apartment earlier that night. Bailey honored the appellant's request. The appellant exited the car and called to Mayo, who came over to where the appellant was standing. The appellant apologized to Mayo for fighting Turley, but Mayo did not accept the apology. Mayo instead told the appellant three times, "Fuck you, [Turley's] my buddy." Neff and Bailey testified that Mayo was visibly intoxicated and that he "flinched" during the brief argument with the appellant; however, no one saw Mayo make any sudden movement toward the appellant. After Mayo "flinched," the appellant punched Mayo once in the mouth. Mayo immediately fell backwards and hit his head against the pavement. After punching Mayo, the appellant got back into the car with Neff and Bailey, and Bailey drove away.
After seeing Mayo fall to the ground, Carter and Turley rushed to his side. Carter ran to a nearby home to have someone call 911. Carter assisted the appellant until the paramedics arrived. Mayo was bleeding from a cut lip and from a laceration on the back of his head. Mayo became unconscious shortly after the paramedics arrived and was rushed to a hospital; he never regained consciousness. X-rays and CT scans revealed that Mayo suffered a skull fracture and a subdural hematoma (bleeding between the brain and the skull). Two hours after arriving at the hospital, Mayo underwent brain surgery for the subdural hematoma. Despite the surgery, doctors were unable to control the swelling in Mayo's brain, and he died three days later. Dr. Jerry Day, who performed the surgery on Mayo, identified "cerebral herniation" as the cause of death. Dr. Day described this condition as acute pressure causing the brain to be pushed downward into the skull and ultimately causing brain death. Dr. James Kaplan, a forensic pathologist who performed the autopsy on Mayo's body, testified that his observations were consistent with a backwards fall being the direct cause of the victim's fatal injuries.
Police arrested the appellant the day after his fight with Mayo. The appellant gave a statement to police in which he admitted to punching Mayo. The appellant stated that Mayo did not throw a punch and that he punched Mayo because "I assumed he was going to hit me [because] you can see that in someone's eyes [when] they're getting ready to hit you." At trial, the appellant testified on his own behalf and again admitted to punching Mayo in the mouth. He also admitted knowing that Mayo was drunk. Unlike his prior statement to police, however, the appellant also maintained that Mayo clenched a fist at his side, put his chest out, and took a step toward the appellant before the appellant punched him.
At the close of testimony, the trial court instructed the jury on involuntary manslaughter under both R.C. 2903.04(A) and (B). The court instructed the jury that, to find the appellant guilty under R.C. 2903.04(A), it had to find that the appellant caused Mayo's death while committing a felonious assault. If it found the appellant not guilty under R.C. 2903.04(A), the court instructed the jury to consider involuntary manslaughter under R.C. 2903.04(B). To find the appellant guilty of R.C.2903.04(B) involuntary manslaughter, the court instructed the jury that it had to find the appellant had committed a misdemeanor assault that caused Mayo's death. The court defined both felonious assault under R.C. 2903.11 and misdemeanor assault under R.C. 2903.13. The jury found the appellant guilty of involuntary manslaughter under R.C. 2903.04(A), finding that the appellant committed a felonious assault that caused Mayo's death.
The trial court sentenced the appellant to the maximum term of ten years imprisonment. The court stated in its sentencing entry and on the record at the sentencing hearing that the appellant committed one of the worst forms of involuntary manslaughter and that the appellant posed the greatest likelihood of recidivism. The appellant commenced this appeal.
 I.
In his first assignment of error, the appellant argues that his involuntary manslaughter conviction is against the manifest weight of the evidence. In reviewing a claim that a judgment is against the manifest weight of the evidence, we must "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted." State v. Stepp (1997), 117 Ohio App.3d 561,567; State v. Thomas (1988), 49 Ohio App.3d 109, 113. We will not reverse a conviction where there exists substantial evidence upon which the trier of fact could reasonably conclude that all elements of an offense have been proven beyond a reasonable doubt. State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph two of syllabus. We are also mindful of the fact that questions of weight and credibility of evidence are primarily for the trier of fact to resolve. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of syllabus; see, also, State v.Garrow (1995), 103 Ohio App.3d 368, 371.
The appellant was convicted under R.C. 2903.04(A), which states that: "No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." Thus, to be convicted under R.C. 2903.04(A), the defendant must have committed (or attempted to commit) some predicate felony that resulted in the victim's death. In this case, the jury found the appellant guilty of causing Mayo's death during the commission of a felonious assault. R.C. 2903.11, Ohio's felonious assault statute, states in part that: "No person shall knowingly * * * [c]ause serious physical harm to another * * * ." R.C.2903.11(A)(1). The appellant argues that his conviction should be reversed because his act of punching Mayo once in the mouth did not constitute a felonious assault. The appellant contends that the evidence did not establish that the appellant knowingly caused serious physical harm which led to Mayo's death.
The appellant's argument seemingly focuses on the mens rea
element of felonious assault as the predicate offense for involuntary manslaughter. To be guilty of felonious assault, a defendant must act "knowingly." R.C. 2903.11(A). "A person acts knowingly, regardless of purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B) (emphasis added); see, also, State v. Dunham (1997), 118 Ohio App.3d 724, 729; Statev. Edwards (1992), 83 Ohio App.3d 357, 361. Thus, the appellant committed a felonious assault if he acted with the awareness that his conduct would probably cause serious physical harm to another. State v. Metz (Apr. 21, 1998), Washington App. No. 96CA48, unreported; see, also, State v.Miller (Jun. 15, 1995), Franklin App. No. 94APA10-1458, unreported (felonious assault does not require intent to cause serious physical harm; it requires only that the conduct will probably cause such harm). In analyzing "knowledge" as a mental state, culpability is inferred from voluntary performance of the act itself, where the risk of a resulting harm is present.State v. Cartellone (1981), 3 Ohio App.3d 145, 148; State v.Aschenbener (Feb. 7, 1991), Cuyahoga App. No. 57900, unreported.
R.C. 2901.01(A)(5) defines "serious physical harm" as any of the following:
 (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 (b) Any physical harm that carries a substantial risk of death;
 (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 (d) Any physical harm that involves some permanent disfigurement, or that involves some temporary, serious disfigurement;
 (e) Any physical harm that involves some acute pain of such duration as to result in substantial suffering, or that involves any degree of prolonged or intractable pain.
Had Mayo survived, he would have suffered "serious physical harm" within the meaning of R.C. 2901.01(A)(5)(b) and (c). After falling and hitting his head on the pavement, Mayo went unconscious, became comatose, and required brain surgery. Had his brain not swelled to the point of causing his death, it is reasonable to conclude that Mayo suffered at least a temporary and substantial incapacity. Further, the fact that Mayo hit his head and required surgery carried a substantial risk of death. See In re Meredith (Feb. 22, 1996), Cuyahoga App. No. 68938, unreported (where injuries so severe as to require hospital treatment, jury may reasonably infer that force used by assault defendant caused serious physical harm). Nevertheless, the appellant argues that the harm resulting from Mayo falling and hitting his head were unintended consequences of his punch. Without any supporting authority, the appellant asks us to separate the victim's injuries into two categories: (1) the cut lip suffered from the punch, and (2) the head injuries suffered as a result of his fall. The appellant argues that he should be held responsible for the former but not the latter. In essence, the appellant argues that he did not knowingly cause serious physical harm because he struck Mayo only once and that the serious harm resulted from Mayo's fall after being punched. The appellant thus concludes he should only be guilty of involuntary manslaughter predicated upon misdemeanor assault.[1]
We disagree with the appellant.
In State v. Smith (Mar. 6, 1996), Lawrence App. No. 94CA37, unreported, we considered a similar argument to the one the appellant poses here. In Smith, the defendant was convicted of felonious assault after he and another person each punched the victim once. The victim fell and hit his head, suffering serious head injuries. The Smith defendant argued that he did not knowingly cause serious physical harm because he hit the victim only once and that the serious harm resulted from the victim's subsequent fall rather than the punch. We rejected the argument in Smith and we reject the appellant's argument now. A defendant is responsible for the natural and logical consequences of his conduct. Id.; see, also, State v. Johnson
(1978), 56 Ohio St.2d 35, 39. Thus, "it is not necessary that the accused be in a position to foresee the precise consequences of his conduct; only that the consequence be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk created by his conduct." Smith (quoting State v. Losey (1985),23 Ohio App.3d 93, 96); see, also, State v. Winston
(Dec. 17, 1997), Scioto App. No. 96CA2419, unreported. InSmith, we concluded that the victim's fall and resulting head injuries were natural and logical consequences of the defendant's conduct of punching him.
In this case, the court instructed the jury on both
involuntary manslaughter based on felonious assault and involuntary manslaughter based on misdemeanor assault. We cannot conclude that the jury clearly lost its way in deciding that the appellant knowingly caused serious physical harm, i.e. committed felonious assault, which resulted in Mayo's death. The victim falling down and striking his head against the pavement are natural and logical consequences of punching someone in the mouth. See Smith, supra; cf. Aschenbener, supra
(reasonably foreseeable that person struck twice and pushed to ground on concrete surface might suffer serious injuries);State v. Childs (Nov. 20, 1986), Cuyahoga App. No. 51270 (serious injury was a natural and probable consequence of shoving someone to a hard floor). Moreover, the mere act of punching someone in the head area carries with it the risk of causing serious physical harm. See State v. Woodall (May 29, 1996), Summit App. No. 17551, unreported (natural consequence of fistfight is serious physical harm to one or more of the parties involved). Finally, the jury had ample evidence to conclude that the appellant knew that Mayo was intoxicated at the time of the punch. Neff and Bailey testified that the victim was visibly intoxicated and the appellant himself testified at trial that he knew Mayo was drunk. Serious physical harm is unquestionably a natural and logical consequence of punching, without warning or provocation, an intoxicated person whose faculties are likely impaired. The first assignment of error is overruled.
 III.
The second assignment of error challenges the prison sentence imposed by the trial court. In sentencing the appellant to ten years imprisonment, the trial court imposed the maximum prison term for a first-degree felony. The appellant does not contest the trial court's choice of imposing prison sanctions over community control sanctions. See R.C. 2929.13(D) (presumption in favor of prison term for first-degree felonies). Instead, the appellant argues that the court's imposition of the maximum sentence is excessive, considering that Mayo's death was unintended and that the appellant showed genuine remorse for the crime.
R.C. 2929.14(C) allows a trial court to impose a maximum prison term only on those offenders "who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders * * *, and upon certain repeat violent offenders * * *." Before it imposes a maximum sentence, the trial court must specifically find that the offender satisfies one of the four classifications and state its reasons, on the record, for imposing the maximum sentence. See State v. Lenegar (Feb. 3, 1999), Vinton App. No. 98CA521, unreported; State v. Kauff
(Nov. 9, 1998), Meigs App. No. 97CA13, unreported. In determining whether an offender committed one of the worst forms of the offense or whether an offender poses the greatest likelihood of recidivism, a trial court should look at the factors outlined in R.C. 2929.12(B) (C),[2] which assess the seriousness of the offense, and R.C. 2929.12(D) (E),[3] which assess the likelihood of an offender committing future crimes.State v. Dunwoody (Aug. 5, 1998), Meigs App. No. 97CA11, unreported. We will not reverse a sentence unless we find, by clear and convincing evidence, that the sentence is either unsupported by the record or contrary to law. See R.C.2953.08(G)(1)(a) and (d). "Clear and convincing evidence" is a degree of proof which is: (1) more than a preponderance of the evidence; (2) less extensive than beyond a reasonable doubt; and (3) adequate to produce in the trier of fact a firm belief in the facts to be established. State v. Schiebel (1990),55 Ohio St.3d 71, 74.
In this case, the trial court specifically stated its reasons for imposing the maximum sentence on the appellant. In the sentencing hearing, the court noted on the record:
 "[The] Court believes under the factors to consider on term under [R.C.] 2929.14(C) that the offender committed the worst form of the offense, that resulting in the death of the victim. [The] Court believes that the offender poses the greatest likelihood of committing future crimes because of the extensive criminal history."
In its sentencing entry, the court also shed light on its reasons for imposing the maximum sentence. The court considered R.C. 2929.12(B) and found "this offense to be more serious in nature in that the injury was exacerbated by the physical condition of the victim; that the victim suffered serious physical harm; the offense was facilitated by the relationship with the victim, and no factors are found to make this less serious." The court also considered R.C. 2929.12(D) and found "recidivism more likely due to defendant's history of criminal convictions and delinquency adjudications; that there has been no genuine remorse by the defendant for his acts; that there is an alcohol abuse pattern related to the offense; the defendant has not responded favorably to sanctions as previously imposed, and there are no facts present to indicate that recidivism is less likely." The trial court thus complied with its statutory duty under R.C. 2929.14(C) before deciding on the maximum sentence. The appellant, however, argues that the trial court's conclusions regarding the seriousness of the offense and the appellant's likelihood of recidivism were wrong. We cannot agree with the appellant because the record supports the trial court's findings.
The appellant's first contention relates to the trial court's finding that he committed one of the worst forms of involuntary manslaughter. The appellant complains that the trial court considered the victim's death as a "serious physical harm" affecting the sentencing determination, notwithstanding the fact that the appellant did not intend to kill Mayo. The appellant protests that "[t]he fact that the death of the victim was unintended was never mentioned by the court." The appellant's complaint in this regard is meritless. First, serious physical harm is but one finding the trial court made with regard to the seriousness of the appellant's offense. The trial court also found that Mayo's physical condition exacerbated the injuries and that the offense was facilitated by the appellant's friendship with Mayo. Indeed, the appellant threw an unprovoked punch at an intoxicated victim, who may not have expected the appellant to punch him in light of their friendship. Second, we fail to see how lack of intent to kill Mayo would make the offense any less serious and less deserving of a maximum sentence. Involuntary manslaughter, by definition, does not require a defendant to intend another's death.Metz, supra. Thus, the fact that the appellant did not intend to kill Mayo does not render his offense any less serious. Moreover, the lack of intent to cause death is not a factor the court needed to consider in determining whether the appellant's conduct was less serious. The court must consider whether the offender did not cause or expect to cause physical harm to the victim. See R.C. 2929.12(C)(3). While the appellant did not intend to kill Mayo with his fateful punch, it cannot seriously be argued that he lacked intent to cause physical harm. We find no error in the trial court's determination that the appellant committed one of the worst forms of involuntary manslaughter and that there were no factors making the appellant's conduct less serious.
The appellant next complains that the trial court erroneously found that he had no genuine remorse for the offense. The appellant emphasizes his apology to the victim's family during his trial testimony and his statement at the sentencing hearing that he deserved to be punished. In light of these statements, the appellant argues that his genuine remorse has been conclusively established. We cannot agree with the appellant. First, the presence of genuine remorse is only one factor the court considered in deciding whether recidivism is more likely. See R.C. 2929.12(D). The court specifically found other factors suggesting likely recidivism: prior convictions and juvenile delinquency adjudications, an alcohol pattern related to the offense, and no favorable response to sanctions previously imposed. The record supports these findings, which would also support imposition of a maximum sentence notwithstanding genuine remorse from the appellant. See State v. Kauff, supra
(while the court is obliged to consider certain factors, it has discretion in its balancing of the factors to determine the most appropriate sentence). The appellant admits to prior delinquency adjudications and acknowledges his felony conviction for receiving stolen property, which indicates an unfavorable response to his juvenile sanctions.[4] It is also undisputed that the appellant was consuming alcohol in the hours leading up to the assault. There is nothing to indicate that the appellant has acknowledged the role of alcohol in contributing to the incident. See id. Second, we must be mindful that the trial court was in the best position to assess the sincerity and genuineness of the appellant's statement at the sentencing hearing. Id. Given the trial court's opportunity to observe him and assess the sincerity of any remorse, the appellant has not clearly and convincingly demonstrated that the trial court erred in finding a lack of genuine remorse. Seeid.; see, also, State v. Sims (Dec. 9, 1998), Summit App. No. 19018, unreported. Further, the appellant's testimony at trial indicated an effort to shift the blame to Mayo by suggesting that the appellant only punched Mayo to avoid being assaulted first. Such blame-shifting supports the trial court's finding. See Kauff, supra. The second assignment of error is overruled.
Having overruled both assignments of error raised by the appellant, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Court of Common Pleas to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. and Evans, J.:
Concur in Judgment Opinion.
Harsha, J.:Dissents.
For the Court
 BY: ___________________________ William H. Harsha, Judge
 BY: ___________________________ Peter B. Abele, Judge
 BY: ___________________________ David T. Evans, Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.
[1] R.C. 2903.13 states in part:
 "(A) No person shall knowingly cause or attempt to cause physical harm to another * * *.
 "(B) No person shall recklessly cause serious physical harm to another * * *."
R.C. 2903.13(C) makes assault a first-degree misdemeanor. Causing the death of another by committing a misdemeanor also results in involuntary manslaughter, pursuant to R.C.2903.04(B). However, violation of R.C. 2903.04(B) is only a third-degree felony, while violation of R.C. 2903.04(A) is a first-degree felony.
[2] R.C. 2929.12 (B) (C) state in part:
 "(B) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:
 "(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
 "(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
* * *
 "(6) The offender's relationship with the victim facilitated the offense.
 "(C) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is less serious than conduct normally constituting the offense:
"(1) The victim induced or facilitated the offense.
 "(2) In committing the offense, the offender acted under strong provocation.
 "(3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.
 "(4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense."
[3] R.C. 2929.12(D) (E) state:
 "(D) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as indicating that the offender is likely to commit future crimes:
 "(1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing * * * or under post-release control * * * for an earlier offense.
 "(2) The offender previously was adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code, or the offender has a history of criminal convictions.
 "(3) The offender was not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code, or the offender has not responded favorably to sanctions previously imposed for criminal convictions.
 "(4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.
"(5) The offender shows no genuine remorse for the offense.
 "(E) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is not likely to commit future crimes:
 "(1) Prior to committing the offense, the offender had not been adjudicated a delinquent child.
 "(2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.
 "(3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.
 "(4) The offense was committed under circumstances not likely to recur.
 "(5) The offender shows genuine remorse for the offense."
[4] The record at the sentencing hearing indicates that the trial court also considered the pre-sentence investigation report ("PSI"). See R.C. 2929.19(B)(1) (sentencing court must consider PSI). We have no doubt that the trial court used the PSI as a basis for imposing the maximum sentence on the appellant. However, despite R.C. 2953.08(F)'s admonition that the PSI "shall" be part of the appellate record, the PSI was not included as part of the appellate record in this case. We remind the parties that the better practice is to include the PSI in the appellate record. See State v. Kauff, supra; Statenv. Lenegar, supra. Nevertheless, even without considering the PSI, the record supports the trial court's imposition of a maximum sentence. Except for the court's finding of no genuine remorse, the appellant does not dispute any of the factors relied upon by the court in finding a great likelihood of recidivism. The appellant does not dispute the accuracy of any facts contained in the PSI, raising no issue as to the court's reliance on them.